UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI, OHIO

Monica F. Jackson,

    Plaintiff,

v.

General Electric Corporation, a New York Corporation

    Defendant

Case No:
Judge:
Magistrate:

**COMPLAINT
AND JURY DEMAND**

## INTRODUCTION

General Electric Corporation ("GE") retaliated against Ms. Jackson for filing a race discrimination complaint against GE. GE retaliated by not providing the statutorily-mandated time to sign a settlement agreement, unilaterally took her off payroll, refused to pay her the bonus earned from the prior calendar year, constructively discharged her, then denied her unemployment by providing a false reason for her departure to the unemployment agency.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28. U.S.C. § 1332(a). Plaintiff is a citizen of the State of Ohio. Defendant is a corporation incorporated under the laws of New York, having its principal place of business in the State of Massachusetts. The amount in controversy exceeds $75,000, exclusive of interests and costs.

2. Venue of this Court is invoked pursuant to 28 U.S.C. § 1391(b)(1) and (2). Venue is appropriate because Defendant resides within this judicial district and because a

1

substantial part of the events giving rise to the claims occurred within this judicial district.

## PARTIES

3. Plaintiff Monica F. Jackson is an African American female, age 51. In 1992, she earned a Bachelor's Degree of Science in finance. In 1997, she received a Master's Degree of Business Administration in Human Resources. She worked for General Electric ("GE"); including its business segment GE Aviation, for 10 years. During her tenure at GE, she was promoted twice during her initial stint with the company. She received training in the GE Advanced Human Resources Development Course, the GE Manager Development Course and GE Executive Assessments as well as other training. She received a number of GE Awards and commendations related to her performance as well as awards of stock options. She was forced to resign as Senior Human Resources Manager-Diversity at GE Aviation after filing a racial discrimination lawsuit.

4. Defendant GE is a New York Corporation with operations in Ohio. GE's aviation division is among the top aircraft engine suppliers, and offers engines for the majority of commercial aircraft. The aviation division is part of the General Electric conglomerate, which is one of the world's largest corporations. GE is a federal defense contractor with 2018 reported revenues of over $30 billion. At all relevant times GE Aviation was an employer for purposes of 42 U.S.C. §§ 2000e *et seq*.

## **STATEMENT OF FACTS**

5. In or around 2005, Defendant recruited Ms. Jackson from a successful seven-year career as Senior Human Resources Manager at Procter & Gamble Company. Defendant hired Ms. Jackson as a Human Resources ("HR") Manager at the Lead Professional Band level.

6. Following two promotions, Plaintiff was at the Executive Band when she departed GE in 2011.

7. In 2016, Plaintiff was re-hired at the Senior Professional Band.

8. On or about February 18, 2019, Ms. Jackson filed a race discrimination charge with the Equal Employment Opportunity Commission ("EEOC").

9. On or about May 1, 2019, Ms. Jackson requested a Right to Sue Notice from the EEOC on the basis that it is unlikely the EEOC will be able to complete administrative processing within 180 days from the filing of the charge.

10. On or about May 2, 2019, the EEOC mailed a Notice of Right to Sue to Ms. Jackson, giving her 90 days to file her complaint in the U.S. District Court.

11. On or about July 30, 2019, Ms. Jackson filed her Complaint and Jury Demand in the U.S. District Court Southern District of Ohio, Western Division at Cincinnati, Ohio. She alleged Defendant engaged in racial discrimination when it failed to promote her to Executive Band level, even though it promoted similarly situated white employees to that level. She also asserted a separate count for breach of contract.

12. About three months into the case, the matter was set for mediation on January 23, 2020 prior to engaging in any discovery in the case.

13. On January 23, 2020, the parties engaged in a full day of mediation that culminated in what appeared at first glance to be a settlement. The Magistrate Judge noted a "draft

settlement…will be the basis…moving forward for the agreement, with a couple minor modifications and additions."

14. In accordance with the law, the agreement contained a provision expressly stating the agreement would not become binding until Ms. Jackson had further opportunity to review it. Specifically, Paragraph (4)e stated GE "has given [Ms. Jackson] at least twenty-one (21) days to consider her decision to enter this Agreement," and that she "has the right to revoke this Agreement at any time within seven (7) days after she signs it."

15. The agreement contained a mutual non-disparagement clause, where the parties would agree to a list of individuals at GE who would be bound by the non-disparagement clause, including names to be provided by GE.

16. The agreement further had a mutual confidentiality provision.

17. Finally, per the agreement, Ms. Jackson would resign her employment with GE.

18. Ms. Jackson and Defendant would jointly draft a resignation letter to be circulated through GE.

19. In addition, GE agreed to provide Ms. Jackson three months of executive outplacement, which was supposed to start February 3, 2020. Payment of the settlement funds were to be paid by Defendant no later than February 21, 2020.

20. Following the settlement conference, and well within the 21 days that she had to review the agreement per the Age Discrimination in Employment Act of 1967 ("ADEA"), GE, through counsel, sent repeated emails to Plaintiff's then-counsel requesting that Plaintiff sign the agreement as soon as possible so that an announcement could be made regarding her departure.

21. On or about January 31, 2020, seven days after the mediation, Ms. Jackson had not signed the proposed settlement agreement. She still had an additional two weeks under the ADEA to contemplate the terms of the agreement.

22. Without providing the statutorily-mandated time to review and sign the agreement, or to even revoke the agreement, per the ADEA, Defendant removed Ms. Jackson from payroll.

23. Upon information and belief, other former employees were not removed from payroll prior to a settlement agreement being fully executed and the requirements of the ADEA being followed.

24. As a result of this conduct, Ms. Jackson was forced to sever the employment relationship without having ever agreed to terms with Defendant.

25. A reasonable employer would have foreseen that a reasonable employee would feel constructively discharged if she were removed from payroll. Defendant intended to force Ms. Jackson out.

26. On or about February 1, 2020, Ms. Jackson filed for unemployment.

27. On or about February 9, 2021, Judge Douglas R. Cole of the United States District Court in the Southern District of Ohio found the parties did not have a binding settlement agreement (noting that "the Court finds that the parties did arrive at an oral settlement agreement at the mediation, but that this agreement took the form of an option contract…")

28. On or about June 23, 2020, Ms. Jackson learned for the first time that her unemployment benefit request had been denied because Defendant informed the unemployment office that Ms. Jackson left voluntarily.

29. Ms. Jackson's counsel emailed Defendant's counsel to clarify whether Defendant's challenge to Ms. Jackson's unemployment benefit request was intentional.

30. On or about June 23, 2020, Defendant retaliated against Ms. Jackson for filing a discrimination lawsuit by intentionally interfering with her unemployment benefits and attempting to coerce her into signing the settlement agreement. Defendant told Ms. Jackson, "[GE] report [to unemployment] that Jackson voluntarily resigned. If we get this matter resolved, GE would likely be willing to forego further challenges to unemployment, but if Jackson continues her attempt to get more money from GE, they will continue to accurately report the facts to unemployment."

31. Despite this statement, GE knew that the information it had reported to unemployment was inaccurate and incorrect.

32. Plaintiff proceeds on the basis of the Ohio law currently in effect as of the date of this filing.

## Count I (Ohio Civil Rights Act Violations – R.C. §4112)

33. Plaintiff incorporates by reference and re-alleges each and every allegation of this Complaint.

34. Defendant at all times relevant hereto was and is employers within the meaning of the Ohio Civil Rights Act ("OCRA"), Chapter 4112, Ohio Revised Code ("R.C.").

35. Defendant engaged in patterns or practices of retaliation against Monica Jackson on account of her engagement in activity protected under the OCRA, all in violation of R.C. §4112.02(I) of the OCRA, and the provisions of the Ohio Administrative Code ("OAC") promulgated thereunder.

36. Defendant's actions constituted continuing violations all of which created a retaliation-based hostile work environment on account of Monica Jackson having engaged in activity protected under R.C.§4112.02(I).

37. By reason of the foregoing acts and omissions of retaliation against Monica Jackson on account of her engagement in activity protected under the OCRA and OAC, in particular R.C. §4112.02(I), and R.C. §4112.99, Plaintiff suffered damages in indeterminate sums to be proven at trial in terms of loss of salary or wages plus value of fringe benefits to date of trial and thereafter; mental anguish and emotional distress, humiliation and disparagement of reputation, and general loss of enjoyment of life, all warranting further or general compensation which ought to be awarded by reason of the deliberate, intentional, willful, wanton, malicious and/or reckless violations of the OCRA and OAC by Defendant.

**PRAYER FOR RELIEF**

1. All appropriate equitable relief, including an award of back pay, lost bonuses, pension, retirement, health insurance, stock options and other fringe benefits; or in lieu of promotion an award of front pay, including bonuses, pension, retirement, health insurance, stock options and other fringe benefits;

2. All appropriate compensatory damages, including relief for all current and future economic and noneconomic losses, diminished employability, losses from adverse health effects, and from mental and emotional distress;

3. An order granting Ms. Jackson's costs, attorney's fees, and all other legal and equitable, declaratory, and/or injunctive relief to which she is entitled.

7

8

Dated: April 9§, 2021	Respectfully Submitted,

/s/ Carla D. Aikens
Carla D. Aikens, Esq.
Carla D. Aikens, P.C.
*Attorneys for Plaintiff*